STEVEN KALAR
Federal Public Defender
SHAWN HALBERT, ESQ. - SBN 179023
LARA VINNARD, ESQ. - SBN 196979
Assistant Federal Public Defender
19th Floor Federal Building – Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

JOHN T. PHILIPSBORN, ESQ. - SBN 83944
Law Offices of John T. Philipsborn
507 Polk Street, Suite 350
San Francisco, California 94102
Telephone:(415) 771-3801
JPhilipsbo@aol.com

Counsel for Defendant JOSEPH ORTIZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>JOSEPH ORTIZ, et. al.,<br><br>        Defendants. | No. CR-12-0119 SI<br><br>**JOSEPH ORTIZ'S MOTION FOR ISSUANCE OF CASE MANAGEMENT ORDER ADDRESSING FURTHER DISCOVERY MATERIALS, INCLUDING SO-CALLED 'HEIGHTENED PROTECTED MATERIAL,' TO PERMIT TIMELY AND EFFECTIVE CASE PREPARATION; REQUEST FOR A COURT DATE FOR DEATH-ELIGIBLE DEFENDANTS**<br><br>Court: Honorable Susan Illston |

**INTRODUCTION**

By this motion and the arguments set forth below, the Joseph Ortiz defense requests that this Court issue a Case Management Order and related Heightened Protective Order that orders the government to produce certain discovery pursuant to a heightened protective order as soon as possible. *See* Docket No. 553 (Court's Proposed Amended Heightened Protective Order, March 4, 2013); Docket No. 558 (Joint Response to Court's March 4, 2013 Proposed Heightened Protective Order).

The defense also renews its request that the Court delete from its proposed order the language proposed by the government that links the discovery production to the so-called "death-penalty mitigation submissions to the United States Department of Justice." As discussed below, in view of the government's repeated arguments (in this case initially, and in other death eligible case discovery proceedings over the past several years) that there is no right to discovery created by the government's death penalty authorization process, the issuance of an Order that links the purpose of discovery mainly (or only) to the "submissions" to the Department of Justice would likely run afoul of existing case law, and would unnecessarily limit the purposes of such discovery, which is meant to allow effective and efficient preparation of the defense of a potential death penalty case including permitting the potential for informed preparations, negotiations, litigation, and presentations involving death penalty issues.

The defense also requests that the Court schedule a hearing date for the death-eligible defendants.

**PROCEDURAL HISTORY**

As part of the first round of case management motions filed in this matter, the Joseph Ortiz defense sought a discovery order that would permit timely preparation of the defense of guilt and penalty issues. To promote further timely and effective trial preparation, in December 2012, the defense approached this Court for assistance in obtaining timely access to material that would

**DEF'S MOTION FOR ISSUANCE OF CASE
MANAGEMENT ORDER**
No. CR-12-0119 SI                                    1

1  permit timely and effective preparation of Joseph Ortiz's case. On January 30, 2013, this Court
2  orally granted Mr. Ortiz's motion and ordered the government to produce certain discovery
3  pursuant to a heightened protective order.

4      The issuance of this Court's written order has now been delayed for almost three months,
5  primarily as a result of actions and positions taken by the government. Most recently, on March
6  12, 2013, moments before the court appearance at which the Court was going to rule on the actual
7  language of the order, the government proposed to the four death-eligible defendants that the
8  discovery order be stayed while the United States Department of Justice in Washington D.C.
9  considered whether it would – *sua sponte*, without any input from the defense – decide not to
10 pursue the punishment of death for charges in the Second Superseding Indictment in the instant
11 case against the four death-eligible defendants. In an act of good faith and compromise, Mr. Ortiz
12 agreed to stay the Court's discovery order during this time period, which the government
13 estimated would be five to six weeks.

14     On Friday, April 12, 2013, the Joseph Ortiz defense learned that it was one of the two
15 defendants who were still defending a death-eligible case. *See* Notice of Intent Not to Seek the
16 Death Penalty against Justin Whipple and Benjamin Campos-Gonzalez (Docket No. 595). A
17 subsequent discussion with counsel for the government on Monday, April 15, 2013 and letter
18 from the government on Friday, April 19, 2013 has informed the Joseph Ortiz defense that
19 undersigned defense counsel will be meeting with the Attorney General's Capital Case Committee
20 in Washington, D.C. in May or June 2013 regarding the government's pursuit of the death penalty
21 against Joseph Ortiz.

22                                 **DISCUSSION**

23 **A.    The Ortiz Defense Requests that the Court Issue the Case Management Order**
24     This case has shifted gears significantly since this matter was last in front of the Court
25 such that the issuance of the case management order compelling the government to produce
26

**DEF'S MOTION FOR ISSUANCE OF CASE
MANAGEMENT ORDER**
No. CR-12-0119 SI                        2

discovery to counsel pursuant to a heightened protective order is even more imperative. The U.S. Attorney's Office has explicitly informed the Joseph Ortiz defense that it will no longer be expected to make a presentation of death penalty issues and mitigation to the United States Attorney for the Northern District of California and then wait for a decision as to whether the case will in fact need to be discussed with the DOJ Capital Case Committee in Washington, D.C. (which makes recommendations to the Attorney General on whether to pursue the death penalty against a given individual). Rather, the government has decided that the case <u>will</u> be considered by the Attorney General's Capital Case Committee and that the Capital Case Committee will be furnished with the very materials that are the subject of the Court's case management order – the material contemplated to have been delivered as part of the "heightened protected material" – to which the defense will have no access without intervention of this Court.

This new information from the government represents a dramatic, and unexpected, development in the case and demonstrates the extent to which it appears that Joseph Ortiz is in need of a well informed, well prepared defense (1) to effectively prepare for guilt and penalty related litigation and trial; (2) to discuss possible resolution of the case; and (3) to further discuss death penalty authorization, or at some future time, de-authorization. Defense counsel's main concerns remain the timely and effective preparation of the defense of this case for a death-eligible defendant, including the timely development of mitigation. This Court is in a position to assist the defense to at least obtain the material that the Government has in its possession that would permit informed litigation and representation of Mr. Ortiz.

**B.     The Ortiz Defense Renews its Objection to the Government's Proposed Language in the Protective Order**

Given the events of the past six weeks, the Ortiz defense also renews its objection to the government's proposed language in the heightened protective order, which the Court adopted in its proposed amended protective order, Docket No. 553, that links the discovery production to the defense's so-called "mitigation submission" to the Department of Justice. This was never the

**DEF'S MOTION FOR ISSUANCE OF CASE**
**MANAGEMENT ORDER**
No. CR-12-0119 SI                              3

relief that the defense requested and it was not the relief that the Court orally granted. The language was proposed by the government <u>after</u> it had indicated that it had no intention of complying with the order regardless of the specific language. Mr. Ortiz has repeatedly objected to this language and is even more concerned about the language at this juncture, given the government's recent reconfiguration of the Ortiz defense's presentations to the Department of Justice.

Specifically, the government asked the Court to include the following language in its order, which the Court included in its proposed protective order:

> At this time, and in order to effectuate the speedy and orderly administration of justice, Heightened Protected Material is being provided for the sole purpose of assisting counsel of record for the four death-eligible defendants in preparing their death-penalty mitigation submissions to the United States Department of Justice. Heightened Protected Material shall not be used for any other purpose, including developing impeachment information against witnesses . . . .

Proposed Amended Heightened Protective Order, Docket No. 553, paragraph 2.

The defense has repeatedly objected to this language, both orally and in writing. *See, e.g.,* Docket No. 536 at 6-7; Docket No. 558 at 2 (proposing alternative language). Particularly in light of the events of the past two months, this language should be rejected for the following reasons:

First, the defense respectfully requests that the Court should premise the order on the authority described in *United States v. W.R. Grace* and not on the defense's submissions to the government. The Ninth Circuit has held that the court's charge of "effectuating the speedy and orderly administration of justice" gives it "the authority to enter pretrial case management and discovery orders to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that trial can proceed efficiently and intelligibly." *United States v. W.R. Grace*, 526 F.3d 499, 508-509 (9th Cir. 2008). Under *Grace*, therefor, this Court should order production of material pursuant to a Heightened Protective Order so that the Court can ensure (1) that the relevant issues as to the death-eligible defendants to be tried are identified and litigated in a timely

1 manner, (2) that the death-eligible parties can engage in appropriate discovery, and (3) so that the
2 Court can make educated decisions with informed input of the parties as to trial issues such as
3 trial groupings (decisions that the Court is making right now) so that the death-eligible defendants
4 can be prepared such that trial can proceed efficiently and intelligently.  This Court can find that
5 while it is appropriate for the defense to use the heightened protective material in preparing for
6 meetings with the Department of Justice, that is not the limit, extent or purpose of production of
7 discovery; rather, the Court is facilitating the timely and appropriate representation of a death-
8 eligible defendant as part of its case management techniques.

9       Second and relatedly, if adopted, the language proposed by the government about using the
10 discovery for the sole purpose of "mitigation submissions" arguably suggests the Court's entire
11 order is premised on a purpose that is prohibited by Ninth Circuit law, as the government has
12 repeatedly argued (notably, before it ever proposed the language at issue to this Court) that the
13 Court is impermissibly premising its Order on the fact that the death authorization process confers
14 some substantive or procedural rights, including discovery rights, under *United States v.*
15 *Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000).  *See, e.g.* Government's Motion for Leave to File
16 Motion for Reconsideration and Motion for Reconsideration, Docket No. 493, at 4:1 - 12.[1]  While
17 the Court has held that it is not relying on such ground in its Order and "explicitly disavowed any
18 finding of discovery rights conferred by the death authorization process," s*ee* Order Denying
19 Request for Leave to File Motion for Reconsideration (Docket 500), at 2:14-15, the defense is
20 nonetheless concerned that an order that states explicitly that the materials are being provided for

---

[1] Government's Motion for Leave to File Motion for Reconsideration and Motion for Reconsideration (Docket#493) at 4:1-12 ("Furthermore, the Government also respectfully submits that the Court committed clear error because its decision appears to be based on the conclusion that the four death-eligible defendants have a right to the disputed materials so that they can use the materials in connection with the death penalty authorization process. Such a conclusion is contrary to Ninth Circuit law, see United States v. Fernandez, 231 F.3d 1240, 1246 (9th Cir. 2000) . . . .)"

**DEF'S MOTION FOR ISSUANCE OF CASE**
**MANAGEMENT ORDER**
No. CR-12-0119 SI                               5

the *sole* purpose of preparing the so-called "mitigation submission" in connection with the death authorization process would appear to support the government's claim about the basis for the Court's order (although the defense believes it would be invited error if the government cited this language in any appeal).

Finally, the Court's proposed order allows defense counsel to submit under seal to Judge Beeler particular documents received under the Heightened Protective Order in order to litigate why such documents should be more generally produced and used for other purposes.  Docket No. 553, paragraph 3.  While the defense has not asked the Court to rule on the government's repeated and alarming misstatements of its *Brady* obligations and the government's clear *Brady* violations to date, the defense has provided the Court with more than sufficient reason to believe that it will be an effective case management technique *in this particular case, given the prosecutors' statements and actions to date*, to produce certain discovery to counsel for death-eligible defendants for use, among other things, in preparing any submissions for the Department of Justice.  The fact that the order contemplates that the defendants can approach Judge Beeler with the material under seal demonstrates that the sole use of the material is not – nor should it be – simply for use in the "mitigation submission to the Department of Justice."  This Court can recognize that it is an unusual case in which the government is contemplating killing the defendant and that such a case requires case management techniques that extend beyond the defense's preparation of a submission to the Department of Justice.

## C. The Ortiz Defense Requests an Appearance Before this Court at the Court's Earliest Convenience

The Ortiz defense requests that the Court issue the case management order forthwith and then set a hearing for the two death-eligible defendants so that the government can inform the Court of how it intends to proceed.

As the Court may recall, after the Court orally granted Mr. Oritz's motion on January 30, 2013, issued a written order on February 5, 2013 (Docket No. 499), and denied the government's

DEF'S MOTION FOR ISSUANCE OF CASE
MANAGEMENT ORDER
No. CR-12-0119 SI                                              6

Motion for Leave to File Motion for Reconsideration (Docket No. 500), the government filed a Notice of Noncompliance on February 7, 2013 (Docket No. 510).  At a hearing on February 8, 2013, the government indicated that it had not had an adequate opportunity to object to the language of the order.[2]  On February 11, 2013, the government filed its Objections to Defendant's Proposed Heightened Protective Order and a proposed Heightened Protective Order on February 11, 2013 (Docket #521).  On February 13, 2013, the four death-eligible defendants filed Defendants' Status Statement and Request for Issuance of Interim Discovery Order Prior to March 1, 2013 Court Appearance (Docket No. 523).

The parties appeared on March 1, 2013, where the Court ordered that the four death-eligible defendants be provided the information that was protected under the heightened protective order pursuant to the order that the Court would issue; the Court indicated that the death mitigation presentation deadline may be flexible depending on the discovery that was produced (Docket No. 555).  On March 4, 2013, the Court issued its Proposed Amended Heightened Protective Order (Docket No. 553).

As directed by the Court, on March 6, 2013, the parties filed their Joint Response to Court's March 4, 2013 Proposed Amended Heightened Protective Order (Docket No. 558).  As described above, when the parties appeared before the Court on March 12, 2013 for issuance of the order, the government came up with a new proposal that it suggested formed a basis for a stay of the discovery order, to which the defense agreed in light of the government's representations.

Given how the case has progressed for Mr. Ortiz since he was last before this Court, undersigned counsel request that the Court issue the final discovery order and then set a court date for the death-eligible defendants at the earliest possible date that the Court and counsel are available.  At that hearing, the defense requests that the Court ask the government to inform the

---

[2] Docket No. 515 incorrectly describes the hearing as having taken place on February 11, 2013.

**DEF'S MOTION FOR ISSUANCE OF CASE**
**MANAGEMENT ORDER**
No. CR-12-0119 SI                                        7

Court and the parties as to how it intends to respond to the Court's order. In preparation for this hearing, Mr. Ortiz renews his requests in his filing Docket No. 523 requesting that the Court enter an Interim Discovery Order setting a timeline for production of certain discovery that the government stated it would produce pursuant to the protective order already issued by the Court.[3]

The defense also renews its request that the Court order the government to prepare a privilege log describing any materials it is refusing to produce, as follows: (1) the Bates range for each document; (2) the date of each document; (3) the nature of each document (i.e. South San Francisco police report, FBI 302, photographs, rap sheet, prior conviction of a witness); (4) whether the document is being completely or partially withheld (produced in redacted form); (5) the reason for the refusal to comply with the Court's order (i.e. witness safety, not producible within the Court's discretion); and (6) whether the document contains *Brady* material.

If the government refuses to comply with the Court's revised protective order, the question of appropriate sanctions will be squarely presented. The defense will be prepared to submit a response regarding appropriate sanctions after receiving the discovery requested herein and the requested privilege log. Until the government produces the material it is willing to produce and details the nature and quantity of the materials it will withhold regardless of the Court's order, any discussion about the appropriate next step and/or sanctions will be made in somewhat of a vacuum. However, as Mr. Ortiz previously argued,[4] if the government's position is that it will

---

[3] *See* Government's Notice of Noncompliance with the Court's Discovery Order of February 5, 2013 (Docket #499), Docket 510 at page 2:2-4 ("Thus, without waiving any claims or objections, the Government will be providing to counsel for the four death eligible defendants an additional amount of materials, pursuant to the terms of the protective order in the Discovery Order, but will continue to withhold other materials."), and page 12:12-14 ("In light of the Court's Discovery Order, the Government has reviewed these materials again to assess what can be safely produced, and will be providing some additional materials to the death eligible defendants.").

[4] Defendant Joseph Ortiz's Response to (1) Government's Notice of Noncompliance with the Court's Discovery Order of February 5, 2013; and (2) Government's Objections to

DEF'S MOTION FOR ISSUANCE OF CASE
MANAGEMENT ORDER
No. CR-12-0119 SI                        8

1  refuse to comply with the discovery order, this Court should order the government to take a

2  position as to whether the sanction that the government requested (that the Court strike the Notice

3  of Special Findings relating to the death penalty and preclude the Government from seeking

4  the death penalty <u>unless and until the Government complies with the Court's Discovery Order</u>)

5  would be a "final" order that would legally permit an appeal of the case management order, and if

6  so, why.

## CONCLUSION

   For the foregoing reasons, the defense respectfully requests that the Court issue the case management order compelling the government to produce discovery and schedule a hearing date for the death-eligible defendants.

Dated: April 22, 2013

                                    Respectfully submitted,

                                    SHAWN HALBERT
                                    LARA VINNARD
                                    JOHN T. PHILIPSBORN


                                    By: /s/ Shawn Halbert
                                    Attorneys for Joseph Ortiz

---

Defendants' Proposed Heightened Protective Order, Docket No. 536, on February 22, 2013, pages 14-15.

**DEF'S MOTION FOR ISSUANCE OF CASE
MANAGEMENT ORDER**
No. CR-12-0119 SI                                       9