MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

ACADIA L. SENESE (CABN 251287)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    acadia.senese@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. CR 12-0119 SI |
| v. | **UNITED STATES' SENTENCING MEMORANDUM** |
| JOSEPH ORTIZ, | |
| Defendant. | November 7, 2013 at 11:00 a.m. |
| | Honorable Susan Illston |

## I.    Introduction

    The defendant, Joseph Ortiz, pled guilty pursuant to a plea agreement under Fed. R. Crim. P. 11(c)(1)(A) and 11(c)(1)(B) to all twenty-five counts charged against him in the Second Superseding Indictment CR 12-0119-SI.  This Court set November 7, 2013, at 11:00 a.m. as the date for judgment and sentencing.  The defendant stands before the Court having pled guilty to, among other crimes, three murders, seven attempted murders, two armed robberies, and obstructing justice in the investigation of the triple homicide.  The government submits the following sentencing memorandum in order to advise the Court of the government's Guidelines calculation and its sentencing recommendation.  For the reasons set forth below, the government respectfully requests that the Court sentence the defendant to

United States' Sentencing Memorandum
CR 12-0119 SI

1   five consecutive life terms plus 60 years.

2       **II.    Guidelines Calculation**

3       The parties have set forth their understanding of the applicable Guidelines calculation in the

4   written plea agreement.  *See* Plea Agt. ¶¶ 7, 8.  The parties agree that the defendant's Combined

5   Offense Level is 43.  <u>Id</u>.  The parties have not reached an agreement as to the defendant's Criminal

6   History Category; however, the government does not dispute the Probation Department's calculation

7   which results in fifteen criminal history points and Criminal History Category VI.  PSR ¶ 209.

8       **III.   The Defendant's Criminal Conduct**

9       The defendant is a violent gang member who participated in the racketeering activities --

10  including murder, attempted murder, and robbery -- of the 500 Block/C Street gang, a gang which

11  claims allegiance to the *Nuestra Familia* prison gang.  His criminal conduct increased with severity as

12  the defendant grew older, served periods of incarceration, and became more involved with gang activity;

13  indeed, the defendant's role in shooting and wounding six victims on December 22, 2010, resulting in

14  the death of three of those young men, occurred just days after the defendant was released from jail for a

15  violent gang-related stabbing.  The defendant is deeply involved in the gang and clings to his allegiance

16  to *Nuestra Familia*.  This allegiance is evidenced not only by his multiple law enforcement contacts in

17  which he was wearing red, loitering in 500 block territory, or admitting his own membership in the gang

18  to law enforcement, but by "kites" intercepted in jail facilities.  Those kites reflect the defendant's desire

19  to elevate his status within the gang while he is in federal prison, as well as indicate that the defendant

20  held status within the gang on the streets to the extent that he was allowed to make decisions and

21  discipline younger "homies," *i.e.*, gang members.  In short, the defendant is committed to being a

22  "Northerner," and participating in the crime and violence which that lifestyle glorifies.

23      **A.    Armed Robberies**

24      In April 2010, the defendant committed two armed robberies.  The first robbery occurred on

25  April 5, 2010 and was a takeover style robbery of a jewelry store.  The defendant, wearing a hood and a

26  bandana to mask his face, brandished a firearm at the store employee and demanded cash and jewelry.

27  His co-conspirator wielded a hammer.  At one point, the defendant asked the employee whether they

28

United States' Sentencing Memorandum
CR 12-0119 SI

1   wanted to die, at which time the employee held up an empty jewelry box, presumably to show the

2   defendant that they had nothing else to give him.  The defendant and his co-conspirator then fled the

3   store with approximately $67,500 worth of jewelry.

4       A few days later, the defendant participated in a second armed robbery.  On April 9, 2010, the

5   defendant covered his face with a bandana and entered a 7-Eleven store with a firearm, which he

6   brandished at the store employee.  The defendant demanded cash and property and threatened to shoot

7   the employee if he did not comply.  The defendant obtained $380 in cash.

8       **B.**    **Attempted Murders**

9       On December 18, 20130, just days after the defendant was released from serving a sentence for a

10  gang-related stabbing, the defendant attempted to kill four people whom he suspected to be rival *Sureño*

11  gang members.  The defendant walked up to a car occupied by four individuals in the parking lot at the

12  St. Francis Liquor Store in Daly City, California, and brazenly opened fire at the victims.  The defendant

13  wounded three of the victims.  Other than their perceived membership in a rival gang, the victims did

14  nothing to provoke the sudden, violent attack.

15      **C.**    **Murder**

16      Four days after the attempted murders in Daly City, on December 22, 2010, the defendant, along

17  with his co-conspirators, went looking for rival gang members who the defendant believed had

18  threatened his gang territory.  They drove down Eighth Lane in South San Francisco and observed a

19  group of individuals that the defendant and his co-conspirators suspected to be members of the rival

20  gang.  The defendant got out of the car and fired his gun at the group of people in order to kill them.

21  The defendant and his co-conspirators shot at seven individuals, wounding six of them, three of them

22  fatally.  Just as with the shootings four days earlier, the victims were essentially ambushed as they

23  walked unwittingly down the road, solely because the defendant and his co-conspirators suspected that

24  they were rival gang members.

25      **D.**    **Obstruction of Justice**

26      Following the triple homicide on December 22, 2010, the defendant hid from law enforcement in

27  a family member's apartment for the night and agreed that someone should hide or destroy the firearms

28

United States' Sentencing Memorandum
CR 12-0119 SI

1  used in the shootings.  The next morning, the defendant hid himself in the trunk of a fellow co-

2  conspirator's car and that person then drove the defendant out of the San Francisco Bay Area.  The

3  defendant fled first to Arizona and then to Mexico to avoid arrest and prosecution in the December 22,

4  2010 murders.  While in Mexico, other co-conspirators paid for his apartment and sent the defendant

5  money, so that he could continue to evade capture.  The defendant also tried to persuade his girlfriend at

6  the time from cooperating with law enforcement.

7          In short, all of the defendant's conduct – from the murders to the robberies – occurred during a

8  relatively short period of time and exemplifies the danger that the defendant presents to the community.

9          **IV.    Discussion**

10                  **A.    Applicable Sentencing Law**

11          Under the current sentencing regime, the Court must sentence in accordance with the directions

12  of 18 U.S.C. § 3553(a).  Section 3553(a) provides that the sentencing "court shall impose a sentence

13  sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this

14  subsection, "and then sets forth specific considerations, including: the nature and circumstances of the

15  offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect

16  the seriousness of the offense, to promote respect for the law, and to provide just punishment for the

17  offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes

18  of the defendant; the defendant's need for rehabilitation; the kinds of sentences available; and the

19  sentencing range under the Guidelines.  18 U.S.C. § 3553(a).  On appellate review, a sentence is

20  reviewed for "unreasonableness" in light of these various factors.  *United States v. Booker*, 543 U.S.

21  220, 260-62 (2005).

22          Although the Supreme Court's decision in *Booker* has rendered the Sentencing Guidelines

23  advisory, the Guidelines still remain the "starting point and initial bench-mark" for sentencing.

24  *Kimbrough v. United States*, 128 S. Ct. 558, 574 (2007) (internal quotation marks and citation omitted);

25  *see United States v. Carty*, 520 F.3d 984, 991 (9th 2008) (*en banc*); *United States v. Ellis*, 641 F.3d 411,

26  415 (9th Cir. 2011).  While there is no presumption of reasonableness for a Guidelines range sentence,

27  *see Carty*, 520 F.3d at 991-992, if a district judge "decides that an outside-Guidelines sentence is

28

United States' Sentencing Memorandum
CR 12-0119 SI

1  warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently

2  compelling to support the degree of the variance."  *Id.* (citing *Gall v. United States*, 128 S. Ct. 586, 597

3  (2007); *see United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011) ("A district court

4  must start with the recommended Guidelines sentence, adjust upward or downward from that point, and

5  justify the extent of the departure from the Guidelines sentence.").

6          A defendant convicted of a racketeering violation can be sentenced for "any act, whether or not

7  charged against defendant personally, that qualifies as a RICO predicate under 18 U.S.C. § 1961(1) and

8  is otherwise relevant under [U.S.S.G.] § 1B1.3."  *United States v. Carrozza*, 4 F.3d 70, 77 (1st Cir.

9  1993) (footnote omitted); *see* U.S.S.G. § 1B1.3(a)(1)(B) (defining relevant conduct for sentencing "in

10 the case of jointly undertaken criminal activity"); *see, e.g.*, *United States v. Morales*, 655 F.3d 608, 636

11 (7th Cir. 2011) (affirming district court sentence that was based on acts of co-conspirators because

12 "'each and every overt act of violence in connection with the Rico conspiracy, although perhaps not

13 specifically agreed to by each and every defendant on every specific occasion, was nonetheless

14 reasonably foreseeable to each and every defendant given the nature of their joint RICO enterprise.'")

15 **B.    A Sentence of Five Consecutive Life Terms Plus 60 Years is Appropriate**

16         A sentence of five consecutive life terms plus 60 years imprisonment is an appropriate and

17 reasonable sentence in this case.  The defendant pled guilty to three murders, seven attempted murders,

18 two armed robberies, there racketeering-related conspiracies, multiple firearms violations, and multiple

19 offenses involving obstruction of justice.  As the Probation Department aptly notes, "words cannot

20 adequately describe the terror the defendant has caused."  The grief and suffering that the defendant has

21 caused are reflected in the statements of the mothers of the young men the defendant killed:  "I lost a

22 part of my heart and feel guilty that I could not protect him;" "I lost my one and only son.  He was a

23 good young man.  He was a good brother to my daughters."  There are no mitigating factors under 18

24 U.S.C § 3553(a) that would warrant a sentence to anything other than which the parties and probation

25 have agreed: five consecutive life terms plus 60 years.

26          The defendant has chosen to continually participate in gang life since at least 2005 and has a

27 history of contacts with law enforcement.  The defendant was very involved as a Northerner throughout

28

United States' Sentencing Memorandum
CR 12-0119 SI

1   his adolescence, and his involvement in the gang and his adherence to the gang's tenets appears to

2   continue to this day.  As the Probation Department believes, a lifetime of confinement is necessary to

3   assure the protection of the community.  Moreover, this is the only sentence that adequately reflects the

4   seriousness of the offenses which the defendant committed.

5          Accordingly, based on all the factors set forth under 18 U.S.C. § 3553(a), the government

6   respectfully requests that the Court impose the sentence to which the parties and the Probation

7   Department agree, *i.e.*, five consecutive life terms plus 60 years imprisonment: three separate

8   consecutive life terms to reflect the killing of each of the three murder victims; one consecutive life term

9   for all the other offenses except for the violations of 18 U.S.C. §§ 924(c) and (j) charged in Counts Nine,

10  Seventeen/Eighteen (which merge for sentencing), Twenty-Five, and Twenty-Seven; one consecutive

11  life term for the violation of 18 U.S.C. § 924(j) charged in Count Seventeen; and 60 years'

12  imprisonment, which are the mandatory consecutive minimum terms of imprisonment required under 18

13  U.S.C. § 924(c), for Counts Nine, Twenty-Five, and Twenty-Seven.

14         **V.     Conclusion**

15         The United States respectfully requests that the Court sentence the defendant Joseph Ortiz to five

16  consecutive life terms plus 60 years' imprisonment, five years of supervised release with special

17  conditions, and a $2,500 special assessment.

18

19  DATED: November 1, 2013                     Respectfully submitted,

20

21                                              MELINDA HAAG
                                                United States Attorney
22

23                                      By:     _____/s/_____
                                                ACADIA L. SENESE
24                                              Assistant United States Attorney

25

26

27

28

United States' Sentencing Memorandum
CR 12-0119 SI