UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH ORTIZ,<br><br>    Petitioner,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | Case No. 12-cr-00119-SI-1<br><br>**ORDER DENYING JOSEPH ORTIZ'S MOTION UNDER 28 U.S.C. § 2255 AND DENYING CERTIFICATE OF APPEALABILITY**<br><br>Re: Dkt. Nos. 1376, 1377, 1485 |

Petitioner Joseph Ortiz, an inmate at the Federal Correctional Complex in Coleman, Florida, filed this *pro s*e motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Dkt. 1376. For the reasons discussed below, the Court DENIES the motion and DENIES a certificate of appealability.

**BACKGROUND**

On July 31, 2012, petitioner and eighteen co-defendants were charged in a second superseding indictment with numerous crimes arising from their involvement in the 500 Block/C Street Gang. The second superseding indictment alleged that petitioner was a ranking member on the 500 Block side of the gang, and charged petitioner with the following crimes: Count One: Racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); Count Two: Conspiracy to commit

murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5); Count Three: Conspiracy to commit assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(6); Counts Five, Six, Seven, Eight, Thirteen, Fourteen, Fifteen, and Sixteen: Attempted murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(5) and 2; Counts Ten, Eleven, and Twelve: Murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2; Counts Nine, Eighteen, Twenty-Five, and Twenty-Seven: Use or possession of a firearm during or in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2; Count Seventeen: Use of a firearm during or in furtherance of a crime of violence causing murder, in violation of 18 U.S.C. §§ 924(j) and 2; Count Twenty: Conspiracy to obstruct justice, in violation of 18 U.S.C. § 372; Count Twenty-One: Obstruction of justice, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; Count Twenty-Two: Concealment of object to obstruct investigation, in violation of 18 U.S.C. §§ 519 and 2; Count Twenty-Three: Conspiracy to commit robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951(a); and Counts Twenty-Four and Twenty-Six: Robbery affecting interstate commerce, in violation of 18 U.S.C. §§ 1951(a) and 2. Dkt. No. 224. Counts Ten, Eleven, Twelve, and Seventeen each carried the possibility of the death penalty.

Petitioner was represented by Shawn Halbert of the Federal Public Defender, and John Philipsborn as learned counsel. Petitioner's lawyers filed a number of pretrial motions, including motions for discovery in defense of a death-eligible defendant (Dkt. No. 152); to preclude the government from seeking the death penalty and to compel the government to immunize certain witnesses (Dkt. No. 248); to delay the death penalty related submissions and presentation (Dkt. No. 347); for severance (Dkt. No. 428); for advance production of *Giglio* material (Dkt. No. 430); and for inspection and copying of jury records (Dkt. No. 437).

On July 18, 2013, petitioner pled guilty to all the charges against him pursuant to a plea agreement with the government. Dkt. No. 715. As set forth in the plea agreement, petitioner agreed to plead guilty in exchange for the government's agreement not to seek the death penalty against him.[1] *Id*. ¶ 1. In paragraph three of the written plea agreement, petitioner agreed that he

---

[1] At the time petitioner plead guilty, the government had not yet decided whether it would seek the death penalty against petitioner. The government had, at that point, elected not to pursue the death penalty against several of petitioner's co-defendants.

United States District Court
Northern District of California

was guilty of the offenses to which he was pleading guilty, that all of the allegations against him in the second superseding indictment were true, and that specific facts detailed in the plea agreement underlying the charged crimes were true. *Id.* ¶ 3. Petitioner also explicitly agreed to a sentence of "[a] term of imprisonment of five consecutive life terms plus 60 years . . . ." *Id.* ¶ 9(a).

The written plea agreement signed by petitioner also contains the following affirmations:

> 17. I confirm that I have had adequate time to discuss this case, the evidence, and this Agreement with my attorney, and that my attorney has provided me with all the legal advice that I requested.
>
> 18. I confirm that while I considered signing this Agreement, and at the time I signed it, I was not under the influence of any alcohol, drug, or medicine that impaired my judgment or free will, or that affected my ability to understand the terms of this Agreement and/or any of my rights and/or obligations.
>
> 19. I confirm that my decision to enter my guilty plea is made knowing the charges that have been brought against me, any possible defenses, and the benefits and possible detriments of proceeding to trial. I also confirm that my decision to plead guilty is made voluntarily, and no one coerced or threatened me to enter into this Agreement.

*Id.* ¶¶ 17-19; *see also* Dkt. No. 1481 (transcript of July 18, 2013 plea colloquy).

On November 7, 2013, the Court sentenced petitioner, pursuant to the terms of his plea agreement, to five consecutive terms of life imprisonment of life (for Counts One, Ten, Eleven, Twelve, and Seventeen/Eighteen), to be followed by 60 years (consecutive sentences of 10 years' imprisonment for Count Nine and 25 years' imprisonment for Counts Twenty-Five and Twenty-Seven), and concurrent sentences for all remaining counts. Dkt. Nos. 811 (sentencing hearing) 814 (judgment).

Petitioner did not appeal. Petitioner filed the present section 2255 motion claiming ineffective assistance of counsel, and he requests an evidentiary hearing. The government has opposed the motion.

## STANDARD OF REVIEW

A prisoner in custody under sentence of a federal court who wishes to attack collaterally the validity of his conviction or sentence must do so by filing a motion to vacate, set aside or

correct the sentence pursuant to 28 U.S.C. § 2255 in the court which imposed the sentence. 28 U.S.C. § 2255(a). Under 28 U.S.C. § 2255, the federal sentencing court is authorized to grant relief if it concludes that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *See Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). If the court finds that relief is warranted under § 2255, it must "vacate and set the judgment aside" and then do one of four things: "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b); *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999).

"An inmate filing a claim for federal habeas relief under 28 U.S.C. § 2255 is entitled to an evidentiary hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (quoting 28 U.S.C. § 2255(b)). The Ninth Circuit has characterized this standard as "requiring an evidentiary hearing where the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *Leonti*, 326 F.3d at 1116 (internal quotation marks and citation omitted).

## DISCUSSION

In his section 2255 motion, petitioner asserts that counsel was ineffective for the following reasons: (1) "by failing to investigate, gather and/or seek to expand the presentation of mitigating evidence to the government before it decided on whether to seek the death penalty during the penalty authorization process"; (2) counsel "pressur[ed] Petitioner into entering a plea of guilty . . . because he informed him that if he insisted on going to trial, he would get convicted in a [New York second] and receive the death penalty, in which was grossly mischaracterized because Petitioner had already furnished counsel with evidence to the contrary"; (3) "counsel had failed to discuss the ramifications and fully examine the language in the plea in its entirety by failing to discover that the government had committed two (2) spelling errors . . . which[] changes the

4

gender of the Defendant completely."[2] Dkt. No. 1376 at p. 1 of Pet's Mem. (brackets in original).

In his reply brief, petitioner asserts for the first time that "[m]oreover, counsel had been apprised of Petitioner's having been prescribed an antipsychotic drug, which he had been successfully treated in the past as a juvenile." Dkt. No. 1513 at 5. Petitioner asserts that "given the present understanding of the properties of the drug coupled with its serious side effects, Petitioner's guilty plea was 'involuntary' and unintelligent." *Id*. Petitioner has also filed an affidavit in which he describes various meetings he had with his attorneys, states that he told his attorneys that there was no direct evidence linking him to the crimes and that he also pointed out to his lawyers the "lies" and "inconsistencies" in the statements and testimony of the government's key cooperating witnesses. Dkt. 1376-1 at ¶¶ 1-26. Petitioner also states in his affidavit that his lawyers told him that entering a plea to a life sentence was his best option, that if he went to trial he would be "convicted in a New York second," and would face the death penalty, and that "[b]oth attorneys just made me think & believe that signing to a plea bargain for a life sentence was it & nothing else." *Id*. ¶¶ 15, 27. Petitioner also states that "the attorneys had me convinced that I would only get sentenced to one (1) term of life imprisonment, instead, in all actuality, the language in the plea subjected me to five (5) consecutive life sentences with an additional sixty (60) years." *Id*. ¶ 28.

A petitioner who pleads guilty on the advice of counsel may only attack the voluntary and intelligent character of the plea by proving that counsel's advice was not within the range of competence required of criminal defense attorneys. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). The *Strickland* standard of review for ineffective assistance of counsel applies to the instant situation. *Strickland v. Washington*, 466 U.S. 668, 688-92 (1984).

Under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), petitioner must show deficient performance and prejudice. In satisfying the first prong,

---

[2] The two spelling errors that petitioner asserts were "critical" are contained in paragraph 20 of the plea agreement. In that paragraph, petitioner's counsel affirmed: "I have fully explained to my client all the rights that a criminal defendant has and all the terms of this Agreement. In my opinion, my client understands all the terms of this Agreement and all the right she [sic] is giving up by pleading guilty, and, based on the information now known to me, her [sic] decision to plead guilty is knowing and voluntary." Dkt. at ¶ 20.

the petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test if the petitioner cannot establish incompetence under the first prong. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

On the prejudice prong, petitioner must show that counsel's errors were so serious as to deprive the defendant of a fair trial. *Strickland,* 466 U.S. at 688. The test for prejudice is not outcome determinative, i.e., defendant need not show that the deficient conduct more likely than not altered the outcome of the case; however, a simple showing that the defense was impaired is also not sufficient. *Id.* at 693. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; a reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694. A habeas petitioner has the burden of showing through evidentiary proof that counsel's performance was deficient. *See Toomey v. Bunnell*, 898 F.2d 741, 743 (9th Cir.), *cert. denied*, 498 U.S. 960 (1990); *see also Rios v. Rocha*, 299 F.3d 796, 813 n.23 (9th Cir. 2002) (rejecting two ineffective assistance of counsel claims based on petitioner's failure to produce evidence of prejudice).

The Court concludes that petitioner has not demonstrated ineffective assistance of counsel. As to petitioner's first claim that his lawyers failed to investigate, gather and/or seek mitigation evidence, the record reflects that in fact counsel zealously represented petitioner and filed numerous motions related to the death penalty authorization process, including motions for discovery, to preclude the government from seeking the death penalty against petitioner, and to

delay the death penalty authorization process. There is no support for petitioner's claim that counsel's performance was deficient.

With regard to petitioner's remaining claims related to his guilty plea, petitioner has not shown that counsel's representation fell below an objective standard of reasonableness. Petitioner claims that counsel coerced him into pleading guilty by telling him that he would likely be convicted at trial and that a plea would avoid the death penalty. However, there is nothing coercive or objectively unreasonable about providing such advice, and to the contrary, counsel would be remiss in their duties if they had not provided petitioner with a candid assessment of his case.

Further, petitioner's sworn statements in the written plea agreement and at the plea colloquy belie his claims that his guilty plea was somehow involuntary and that he did not fully understand the ramifications of pleading guilty. Sworn statements in open court are presumed to be truthful, and a court should summarily dismiss "conclusory allegations unsupported by specifics" or "contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea.").

The plea agreement unequivocally stated that petitioner signed the agreement after having adequate time to discuss his situation with his counsel, and that his counsel gave him all the legal advice he requested. Dkt. No. 715 ¶ 17; Dkt. No. 1481 at 19:1-15 (at plea colloquy, petitioner's representation that he had signed plea agreement and carefully reviewed it with defense counsel beforehand). The plea agreement also contained a signed statement by defense counsel stating that counsel had explained to petitioner all of petitioner's rights and the terms of the agreement, and that counsel believed petitioner understood all the terms and rights he was giving up by pleading. Dkt. No. 715 at ¶ 20.[3] Similarly, petitioner affirmed both in the plea agreement and at the plea colloquy that his plea was entered into voluntarily and that no one coerced or threatened

---

[3] Petitioner's claim of ineffective assistance of counsel based that the two typographical errors contained in paragraph 20 of the plea agreement fails because petitioner cannot show that either prong of the *Strickland* test is met.

7

him to enter into the agreement. *Id.* ¶ 19; Dkt. 1481 at 29:15-21 (petitioner stated that "[t]his is my free choice."). In addition, although petitioner's reply asserts that his decision to plead guilty was somehow affected by medication he had been prescribed, this assertion lacks factual support[4] and is contradicted by petitioner's affirmations in the plea agreement and at the plea colloquy. Dkt. No. 715 ¶ 18; Dkt. No. 1481 at 3:16-4:5 (counsel informed the Court that petitioner was taking a prescription medication, and petitioner stated he was "clear-headed" "fine" and "perfect" the day of the plea colloquy).

Petitioner also represented to the Court under oath that he agreed that there was a factual basis for his guilty pleas and that he had reviewed them with his attorney. Dkt. No. 715 at ¶ 3 (plea agreement); Dkt. 1481 at 23:9-27:20 (government's summation of factual basis it was prepared to prove at trial); *id.* at 27:24-28:1-14 (petitioner's admission that he heard government's summation of factual basis and agreed with it, and petitioner agreed that he reviewed "[e]very single line" of paragraph 3 of plea agreement and that everything was true). Finally, although petitioner states that he expected to be sentenced to a single life sentence, petitioner acknowledges that he was sentenced in accordance with the sentence specified in the plea agreement. Dkt. 715 ¶ 9(a). Similarly, at the plea colloquy the issue of sentencing was discussed in great detail, including the fact that certain counts carried mandatory life sentences and that other counts had mandatory consecutive sentences. Dkt. 1481 at 10:14-23:5. Petitioner affirmed his understanding of the possible sentence in this case, as well as his understanding that the Court could impose a sentence that differed from the sentence proposed by the defense. *Id.* at 21:25-23:5.

For the foregoing reasons, the 28 U.S.C. section 2255 petition for a writ of habeas corpus is DENIED. The Court finds that petitioner has not demonstrated a need for an evidentiary hearing because petitioner has not "made specific factual allegations that, if true, state a claim on which relief could be granted." *Leonti*, 326 F.3d at 1116.

## CONCLUSION

The Court DENIES petitioner's section 2255 motion, and DENIES a certificate of

---

[4] Petitioner's affidavit makes no mention of any prescription medication.

8

appealability, finding that this is not a case in which reasonable jurists would find this Court's assessment of the constitutional claims debatable or wrong. *See* 28 U.S.C. § 2253(c)(1)(B).

**IT IS SO ORDERED.**

Dated: August 10, 2015

SUSAN ILLSTON
United States District Judge